# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL DOCKET NO. 5:05CV212

| | | |
|---|---|---|
| LORI A. PORTER, and POWELL D. PORTER, individually and as the Trustee of the PORTER FAMILY TRUST, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | ORDER |
| TAMMERA M. PORTER, | ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** is before the Court on Plaintiffs' Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial, filed April 10, 2007 [Document #39]; and Defendant's Response to Plaintiffs' Motion for Judgment as a Matter of Law, or Motion for New Trial, filed April 20, 2007 [Document #40]. These Motions and Memoranda are now ripe for disposition by the Court.

The Court, having carefully considered the arguments, the record, and the applicable authority, will deny Plaintiffs' motions.

## I. PROCEDURAL AND FACTUAL HISTORY

On June 17, 2005, Plaintiffs, citizens of Florida, filed suit in this Court on diversity grounds against Defendant, a citizen of Kentucky. Plaintiffs asserted claims against Defendant under North Carolina law for breach of contract, fraud, and constructive fraud. Plaintiffs sought specific performance, pursuant to an alleged agreement with Defendant, for the transfer of Defendant's interest in two tracts of land that were allegedly obtained by Defendant through

1

fraud, to a trust. Plaintiffs also sought punitive damages. On August 1, 2005, Defendant asserted counterclaims against Plaintiffs for fraud, constructive fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, slander, and conversion. Defendant sought nullification of a quitclaim deed, which was allegedly obtained by Plaintiffs through fraud, that transferred Defendant's interest in four tracts of land to a trust. Defendant also sought recovery of allegedly converted personal property, damages for her counterclaims for intentional infliction of emotional distress, negligent infliction of emotional distress, and slander, and punitive damages for all of her counterclaims. On January 3, 2006, Defendant voluntarily dismissed her counterclaims for intentional infliction of emotional distress, negligent infliction of emotional distress, and slander.

On March 13, 2007, the Court conducted a three-day jury trial. The Court denied the parties' motions for directed verdict, and on March 16, 2007, the jury returned a verdict against Plaintiffs on all claims, and for Defendant on all remaining counterclaims. The jury declined to award Defendant punitive damages. On April 5, 2007, the Court entered a judgment in favor of Defendant. On April 10, 2007, Plaintiffs timely filed the motions currently before the Court.

The factual grounding revealed by the evidence in this case grew out of the parties' familial relationships.[1] Plaintiff Powell Porter is the biological father of Defendant Tammera Porter. Plaintiff Powell Porter is the husband of Plaintiff Lori Porter. Prior to marrying Lori Porter, Powell Porter had adopted Lori Porter when she was nineteen years old. Powell Porter married Lori Porter when she was thirty-four years old.

---

[1] The factual history provided herein was established at trial through the testimony of Plaintiffs Powell and Lori Porter, and their witnesses, and Defendant Tammera Porter, and her witness.

Powell Porter and Lori Porter are the heads of a group of people loosely known as the "Powell Porter Family." The Powell Porter Family ("the family") consists of approximately twenty men, women, and children whom Powell Porter has adopted either formally or informally as members of his "family." Several members of the the family became members by way of Powell Porter's ministry in South Florida. Plaintiffs described the family as not defined by blood or legal relationship, but as "the people who you would choose to be in your family." Several former members of the family became estranged from it due to disagreements with Powell or Lori Porter. Defendant Tammera Porter is one such individual.

Members of the family primarily reside on two large areas of land in Southern Florida and Wilkes County, North Carolina, respectively. This land is principally owned and controlled by Powell Porter. The land in Wilkes County includes land known as the "Porter Ranch," which is used by the family to breed, train, and sell saddle horses. The tracts of land specifically involved in this case include land that encompasses a large portion of Porter Ranch.

The parties' primary dispute centered around the purported transfer of six tracts of land into a trust. The parties did not dispute that, prior to February 2002, Plaintiffs Powell Porter and Lori Porter, and Defendant Tammera Porter owned six tracts of land in Wilkes County, North Carolina as tenants-in-common. Plaintiffs contended that in early 2002, all three tenants-in-common, Powell, Lori, and Tammera, agreed to transfer their property interests in the six tracts into a revocable trust, known as the Powell Porter Family Trust ("the trust"). The trust was executed on February 23, 2002. Plaintiffs' and their witnesses testified that the purported purpose of the trust was to provide for the family in the event of Powell Porter's demise. The sole-settlor and trustee of the trust was Powell Porter. The purported beneficiaries of the trust

were various designated members of the family. On at least one occasion, Powell Porter changed the designated beneficiaries in the trust as members of the family lost or gained favor with him.[2]

Plaintiffs contended that they, Powell and Lori Porter, and Defendant Tammera Porter executed an agreement to transfer the property they owned as tenants-in-common into the trust. The purported agreement was memorialized in a document titled "Memorandum of Trust and Deed," which was signed by all three parties on February 23, 2002, the same day that the trust was executed. (Def. Exh. 13). Plaintiffs contended that the transfer of the property into the trust was to be accomplished by quitclaim deed. Plaintiffs contended that on an undetermined date between the date of the trust agreement, February 23, 2002, and the date the quitclaim deed was signed, August 27, 2002, at the Porter Ranch in Wilkes County, NC, Plaintiff Lori Porter handed an envelope to Defendant Tammera Porter that contained the deeds to the six tracts of land that the parties owned as tenants-in-common, as well as the deeds to six other tracts of land that Plaintiff Powell Porter owned solely in his own name. Lori purportedly instructed Tammera to deliver the envelope of deeds to family friend Rebecca Plummer in Winston-Salem, North Carolina. The deeds were to be delivered to Plummer so that she or the attorney from whom she worked, Joseph Hart, could prepare the quitclaim deed that would transfer all of the property into the trust.

---

[2] The Court notes that the trust was created after Plaintiff Powell Porter's federal convictions for interstate transportation of stolen property and conspiracy to commit same on January 18, 2002 and before Plaintiff's sentencing on the convictions, which occurred on October 29, 2002. The Court also notes that the trust was purportedly prepared by an attorney by the name of Joseph Williams Hart of Winston-Salem, NC. (Def. Exh. 15). Mr. Hart did not testify at trial, and there was no indication at trial that Plaintiffs or Defendant ever spoke to Hart or any other licensed attorney during the preparation and execution of the trust and its accompanying documents. Plaintiffs purportedly executed the trust and its accompanying documents on the advice of Rebecca Plummer, a legal assistant to Hart and notary public, as well as one or more family members. Ms. Plummer is a long-time friend of Powell Porter and the family and testified on Plaintiffs' behalf.

Plaintiffs maintained that Tammera, after receiving the envelope from Lori, and being accompanied by two family members, Anita Porter and Sara Baker, traveled from Porter Ranch to Winston-Salem.  Tammera, Anita, and Sara purportedly traveled to Winston-Salem in a family owned sport utility vehicle.  Plaintiffs alleged that the sport utility vehicle was driven by Anita, that Tammera was seated in the front passenger seat, and that Sara was seated in a passenger seat behind the front seats.  During the drive, Tammera purportedly engaged in a telephone conversation with Lori about the number of deeds in the envelope.  Plaintiffs maintained that Lori informed Tammera that all twelve deeds should be delivered to Plummer.  Plaintiffs also maintained that at some time during the drive, Tammera removed two deeds from the envelope and placed them between the front seats of the vehicle in which they were riding.  Thus, according to Plaintiffs, Tammera delivered to Plummer only ten deeds, not twelve.  The deeds that Tammera allegedly removed from the envelope were two of those by which she owned an interest as a tenant-in-common.[3]

On August 27, 2002, Plaintiffs Powell and Lori Porter, and Defendant Tammera Porter signed a quitclaim deed conveying ten tracts of land to Plaintiff Powell Porter as trustee of the Porter Family Trust. (Def. Exh. 14).  The parcels were numbered one through ten in the quitclaim

_____

[3] The Court notes that both of the family members that allegedly accompanied Tammera during the trip to Winston-Salem, Anita Porter and Sara Baker, testified for Plaintiffs at trial.  The witnesses generally corroborated Plaintiff Lori Porter's account of the telephone conversation with Tammera, and provided the allegations that Tammera removed the deeds from the envelope and placed them between the front seats of the vehicle.  However, on cross examination, the witnesses could not provide specific details concerning other events during the trip, and even contradicted each other as to very general details, such as where they went after the delivery to Plummer, whether or not Plummer accompanied them to lunch after visiting her office, and how long the trip to Winston-Salem lasted.  Additionally, the witnesses did not explain exactly how, in their presence, the two deeds were taken from the envelope by Tammera and placed between the seats of the vehicle.

deed, and were identified by number of acres as well as by reference to the Wilkes County Registry of Deeds. (*Id*.). The largest tract in the quitclaim deed is 50.583 acres. (*Id*.). By contrast, the number of acres for one of the two tracts of land which Plaintiffs accused Defendant of fraudulently sequestering from the quitclaim deed is 237 acres. (Pl. Exh. 7, 8). The 237 acre tract was by far the largest tract of land at issue in this case. (Pl. Exh. 7).

Defendant continued to live with the family at Porter Ranch until March 2005. Plaintiffs maintain that in late 2004 and early 2005, Defendant engaged in abusive and illicit behavior at Porter Ranch, and that as a result, Plaintiff Powell Porter terminated Defendant's "employment" at the ranch and asked her to leave. Defendant subsequently moved to Kentucky where she attempted to gain employment at other horse ranches. Plaintiffs contend that they were not aware that two deeds were missing from the August 27, 2002 quitclaim deed until late May 2005. At that time, Plaintiffs received a letter from Defendant, dated May 25, 2005, that requested partition of the two tracts of land that remained in the names of the parties as tenants-in-common. Plaintiffs maintain that they initiated this legal action in June 2005 as a result of Defendant's alleged revelation.

Defendant's version of the events that involve the creation of the trust, the transfer of the property into the trust, and the circumstances surrounding her final departure from Porter Ranch differ markedly from Plaintiffs' allegations. Defendant contended that Plaintiffs informed her in early 2002 that the trust was to be created in order to shield any of Plaintiff Powell Porter's property from possible forfeiture to the federal government as a result of his January 18, 2002

6

conviction.[4]  Defendant stated that Plaintiff Powell Porter and the family were very concerned about possible restitution after Powell's conviction because they were badly in debt and did not have ready cash to satisfy a potential restitution order.

Defendant contended that Plaintiffs Powell and Lori Porter told her that in order to protect her property interest in the tracts of land in which she was a tenant-in-common with Powell from possible forfeiture, she would need to place them into the trust.  Defendant contended that she believed Plaintiffs' representations that she would protect her property interest in the land by transferring it into the trust.  Defendant further contended that she would not have consented to the transfer if she had known that she would lose or potentially lose her property interest.  Defendant also stated that she was not offered anything, either under the trust or otherwise, in exchange for transferring her property interest into the trust.[5]

Defendant contended, through the testimony of her witness, Robert Levak, who came to be an estranged family member like herself, that Plaintiffs created the trust as a means to terminate Defendant's interest in the property.  Defendant contended that Plaintiffs were concerned about losing control over Defendant's life and wanted to get her "off of the land."  Defendant maintained that Plaintiffs invented the threat of forfeiture as a way to induce her into agreeing to transfer her property interest into the trust.  Defendant contended that Rebecca Plummer, whom Defendant trusted, supported Plaintiffs' story about possible forfeiture and

---

[4] Defendant maintained that Powell Porter asked her to testify at his criminal trial, but she refused.

[5] Although the original version of the trust designated Defendant a named beneficiary, (Def. Exh. 15 at 15), Defendant maintained that she had never seen the trust until this trial, and that Plaintiffs never informed her of the trust's contents.

prepared the documents that completed the transfer.

Defendant denied Plaintiffs' allegations that she removed two deeds from an envelope that she was instructed to deliver to Rebecca Plummer. Defendant stated that Plaintiff Lori Porter instructed her to deliver sealed envelopes to Plummer on several occasions and that she did not know on which occasion the envelope contained the deeds in question. Defendant also denied that she ever had a telephone conversation with Lori Porter about the deeds during a delivery trip to Plummer.

Defendant acknowledged that it was the parties' intent that all of the tracts of land in which they were tenants-in-common be placed into the trust. Defendant stated that she did not know how or why the two allegedly missing deeds were not transferred into the trust with the other deeds. Defendant maintained that she was unaware that the two deeds were not transferred into the trust until March 2005, when she ceased to live at Porter Ranch and became estranged from the family. Defendant maintained that, after her estrangement from the family in March 2005, she asked her attorney to examine the deeds for the six tracts of land which she had owned as a tenant-in-common with Plaintiffs. Defendant stated that she learned from her attorney that she had lost her property interest in four tracts of land by transferring them into the trust, and that two of the tracts were not transferred into the trust.

Defendant denied Plaintiffs' allegations that she engaged in abusive and illicit behavior at Porter Ranch. Defendant acknowledged that she left Porter Ranch on or about March 2005 and moved to Kentucky. Defendant contended that upon her move to Kentucky, she left several items of personal property at Porter Ranch that she continued to claim as her own. Defendant maintained that the personal property included four named horses, an all terrain vehicle, and a

number of other personal effects and items that had sentimental value to her. Defendant maintained that Plaintiffs have refused to return these items to her, despite attempts by her to retrieve them through a third-party and despite Plaintiffs' assertions that they would allow a third-party to retrieve them for Defendant. Plaintiffs contended that Plaintiff Powell Porter, not Defendant, was the true owner of the horses and the all terrain vehicle, and that Defendant had abandoned her personal effects.

## II. DISCUSSION

### A. Standard of Review

A jury verdict is "permitted to stand unless, under Rule 50(b), no substantial evidence is presented to support the award . . . or, under Rule 59, the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004) (quoting *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir. 1991)) (quotations omitted). Judgment as a matter of law is appropriate only when, viewing the evidence in the light most favorable to the nonmoving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a)(1); *Babcock v. Bellsouth Advertising and Publishing Corp.*, 348 F.3d 73, 76 (4th Cir. 2003). Thus, the Court must draw all reasonable inferences in the non-movant's favor without weighing the evidence or assessing the witnesses' credibility and grant judgment as a matter of law only if "there can be but one reasonable conclusion as to the verdict." *Varghese v. Honeywell Intern., Inc.,* 424 F.3d 411, 416 (4th Cir. 2005) (quotations omitted). "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the

credibility of the witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995) (quotations omitted).

### B. Plaintiffs' Motions

Plaintiffs' move for judgment as a matter of law on the grounds that "there was insufficient evidence in the record in this case from which the jury could return a verdict in favor of Defendant on any of the claims asserted in this action." (Pl. Motion at 2). Alternatively, Plaintiffs' move for new trial on the grounds that "the jury's verdict was against the clear weight of the evidence and allowing such verdict to stand would represent a miscarriage of justice." (*Id*.). Defendant opposes both motions. (Def. Resp. at 1-3).

### 1. Plaintiffs' Breach of Contract Claim

Plaintiffs first dispute the jury's finding that Defendant did not breach her contract to transfer her property interest in the six commonly-owned tracts of land into the Porter Family Trust.[6] (Pl. Motion at 3).

After the close of the evidence, the Court instructed the jury on Plaintiffs' breach of contract claim as follows:

---

[6] The jury found that Defendant in fact entered into a contract with Plaintiffs to transfer her property interest in the six tracts of land into the trust. (Verdict, Issue #1). As such, the jury's finding on the issue of contract formation is not disputed by Plaintiffs.

The . . . relevant issue is:  Did the Defendant, Tammera Porter, breach a contract with Lori Porter and Powell Porter to transfer, by quitclaim deed, her interest in six deeds, upon which she was a tenant-in-common, into the Porter Family Trust?

You will answer this issue only if you have answered the first relevant  issue [contract formation] "Yes" in favor of the plaintiff.

On this issue the burden of proof is on the plaintiffs.  This means that the plaintiffs must prove, by the greater weight of the evidence, two things:

<u>First</u>, that the time had come for the defendant to perform a material term of the contract.  This means that, at the time of the alleged breach each condition precedent to the defendant's obligation to perform was satisfied.
<u>Second</u>, that the defendant failed to perform a material term of the contract.

*See* N.C.P.I., Civil 502.00, Contracts, Issue of Breach by Non-Performance (May 2003).

The Court also defined the terms "condition precedent" and "material term" as follows:

With regard to the first requirement, a condition precedent is a requirement that some act or event occur or not occur before a party to a contract becomes obligated to perform.  A condition precedent may be written, oral, or implied from the circumstances.

*See id*.

With regard to the second requirement, a material term is one that is essential to the transaction, that is, a term which, if omitted or modified, would cause one of the parties to withhold assent or to bargain for a substantially different term.  Not every term in a contract is material.  A party's failure to perform a term that is not material is not a breach of contract.  In determining whether a term is material, you may consider the following factors:  the subject matter and purpose of the contract; the intentions of the parties; the scope of performance reasonably expected by each party; and the prior dealings of the parties.

*See id*.

The Court also instructed the jury in its opening instructions on burden of proof and witness credibility.

Plaintiffs argue that they presented "credible evidence at trial that: a) [Defendant] agreed to transfer her interest in the six deeds; b) she was reminded by [Plaintiff Lori Porter] by telephone that all deeds needed to be included [in the envelope to Plummer]; and c) she secretly and knowingly withheld and failed to deliver two of these deeds." (Pl. Motion at 3-4).

The Court notes that Plaintiffs' evidence of Defendant's alleged breach of contract rested almost entirely on the testimonies of Plaintiff Lori Porter, and Plaintiffs' witnesses Anita Porter and Sara Baker. Under the standard of review for a new trial motion, the Court finds that the evidence at trial demonstrated that a reasonable juror would have reason to question the credibility of all three of these individuals. Anita Porter and Sara Baker's testimonies were particularly problematic. Plaintiffs contended that Anita Porter and Sara Baker were present during a trip to Winston-Salem when Defendant allegedly was "reminded by [Plaintiff Lori Porter] by telephone that all deeds needed to be included [in the envelope to Plummer]" and "[Defendant] secretly and knowingly withheld and failed to deliver two of these deeds." (*Id*.). However, as the Court previously noted, Anita Porter and Sara Baker failed to provide consistent testimony as to even general details about the alleged trip to Winston-Salem. Although they generally corroborated Plaintiff Lori Porter's testimony regarding the telephone conversation to Defendant, the two witnesses could not agree on how long the trip lasted, where they traveled immediately after delivering the deeds to Rebecca Plummer, or whether or not Plummer accompanied them to lunch after they delivered the deeds. Additionally, neither witness provided an explanation as to how, in their presence, Defendant allegedly removed two deeds from an envelope and placed them between the seats of the vehicle in which they were traveling. Furthermore, the Court notes that both witnesses are members of the Porter family and wholly

dependent on Plaintiffs for financial support.

The Court also notes that the quitclaim deed which Plaintiffs signed on August 27, 2002, enumerated only ten tracts of land, not twelve, and such tracts were identified by acreage. (Def. Exh. 14). Additionally, the largest tract of land is conspicuously absent from the quitclaim deed. (Pl. Exh. 7, 8). Such evidence suggests that Plaintiffs may not have expected twelve tracts to be included in the quitclaim deed and casts further doubt on Plaintiffs' allegations that Defendant secretly removed two deeds, including the deed to the largest tract, from being transferred into the trust by the quitclaim deed.

Accordingly, as to Plaintiffs' claim for breach of contract, the Court finds that the jury's verdict is not against the clear weight of the evidence , nor based on false evidence. Nor does the verdict result in a miscarriage of justice. Therefore, Plaintiffs' motion for new trial on said claim is <u>denied</u>. Likewise, as to Plaintiffs' claim for breach of contract, the Court finds that there was sufficient evidence for the jury to find for Defendant. Therefore, Plaintiffs' motion for judgment as a matter of law on said claim is also <u>denied</u>.


**2. Plaintiffs' Fraud and Constructive Fraud Claims**

Plaintiffs also dispute the jury's findings that Defendant did not commit fraud or constructive fraud against Plaintiffs "by failing to transfer her interest in two deeds, despite . . . that [Defendant] had entered into a contract to transfer her interest in all six deeds." (Pl. Motion at 4).

The Court instructed the jury on Plaintiffs' fraud claim as follows:

Plaintiffs' second claim is for fraud. Thus, the . . . relevant issue for this case is: Did Tammera Porter commit fraud against Lori Porter and Powell Porter by failing to transfer her interest in two deeds, upon which she was a tenant-in-common, into the Porter Family Trust?

On this issue the burden of proof is on the plaintiffs. This means that the plaintiffs must prove, by the greater weight of the evidence, six things:

First, that the defendant made a false representation of a material fact.

Second, that the false representation was calculated to deceive. A representation is calculated to deceive when the person who makes it knows it to be false, or makes it recklessly, without any knowledge of its truth or falsity, as a positive assertion.

Third, that the false representation was made with the intent to deceive.

Fourth, that the plaintiffs were, in fact, deceived by the false representation.

Fifth, that the plaintiffs' reliance was reasonable. The plaintiffs' reliance would be reasonable if, under the same or similar circumstances, a reasonable person, in the exercise of ordinary care for *his or her* own welfare, would have relied on the false representation.

And Sixth, that the plaintiffs suffered damages as a result of *their* reliance on the defendant's false representation.

*See* N.C.P.I., Civil 800.00, Fraud (Replacement May 2005).

The Court also instructed the jury on Plaintiffs' constructive fraud claim:

The Plaintiffs' third claim is for constructive fraud. Thus, the . . . relevant issue for this case is: Did Tammera Porter commit constructive fraud against Lori Porter and Powell Porter by failing to transfer her interest in two deeds, upon which she was a tenant-in-common, into the Porter Family Trust?

On this issue the burden of proof is on the plaintiffs. This means that the plaintiffs must prove, by the greater weight of the evidence, two things:

First, that a relationship of trust and confidence existed between the plaintiffs and

the defendant.  Such a relationship exists where one person places special confidence in someone else who, in equity and good conscience, must act in good faith and with due regard for such person's interests.

And Second, that the defendant used *her* position of trust and confidence to the detriment of the plaintiffs and for the benefit of the defendant.

*See* N.C.P.I., Civil 800.05, Constructive Fraud (Replacement May 2002).

Like Plaintiffs' breach of contract claim, Plaintiffs' fraud and constructive fraud claims both hinged on Plaintiffs' allegations that Defendant removed two deeds from an envelope during a trip to Winston-Salem.  As such, Plaintiffs' evidence again rested on the testimonies of Plaintiff Lori Porter, and Plaintiffs' witnesses Anita Porter and Sara Baker.  The Court has already noted the credibility deficiencies in the testimony of these individuals, as well as the inconsistent testimony which they provided with regard to the alleged trip to Winston-Salem. The Court also noted that Plaintiffs signed a quitclaim that enumerated only ten tracts of land and did not include the largest tract of land.

Accordingly, as to Plaintiffs' claims for fraud and constructive fraud, the Court finds that the jury's verdict is not against the clear weight of the evidence, nor based on false evidence. Nor does the verdict result in a miscarriage of justice.  Therefore, Plaintiffs' motion for new trial on said claims is <u>denied</u>.  Likewise, as to Plaintiffs' claims for fraud and constructive fraud, the Court finds that there was sufficient evidence for the jury to find for Defendant, therefore, Plaintiffs' motion for judgment as a matter of law on said claims is also <u>denied</u>.

### 3. Defendant's Counterclaims for Fraud and Constructive Fraud[7]

Plaintiffs dispute the jury's findings that Plaintiffs committed fraud and constructive fraud against Defendant by inducing her to transfer her interest in the tenancy-in-common into the Porter Family Trust. (Pl. Motion at 6).

The Court instructed the jury that the relevant issue as to Defendant's counterclaim for fraud was:

> Did Lori Porter and Powell Porter commit fraud against Tammera Porter by inducing Tammera Porter to enter into a contract with Lori Porter and Powell Porter to transfer, by quitclaim deed, her interest in six deeds, upon which she was a tenant-in-common, into the Porter Family Trust?

The Court instructed the jury that the relevant issue as to Defendant's counterclaim for constructive fraud was:

> Did Lori Porter and Powell Porter commit constructive fraud against Tammera Porter by inducing Tammera Porter to enter into a contract with Lori Porter and Powell Porter to transfer, by quitclaim deed, her interest in six deeds, upon which she was a tenant-in-common, into the Porter Family Trust?

The Court provided instructions to the jury on Defendant's counterclaims for fraud and constructive fraud that were similar to the Court's instructions on Plaintiffs' claims for fraud and constructive fraud. *See* N.C.P.I., Civil 800.00, Fraud; N.C.P.I., Civil 800.05, Constructive Fraud.

Plaintiffs' argue that Defendant "offered no proof of reliance on a false representation" to

---

[7] Defendant asserted fraud and constructive fraud as counterclaims against Plaintiffs and as defenses to Plaintiffs' claims.

support her counterclaims for fraud and constructive fraud.  (Pl. Motion at 7).[8]

In support of her counterclaims, Defendant testified in her own behalf, and was supported by the testimony of her witness, Robert Levak.  The Court notes that both Defendant and Levak provided consistent and credible testimony.  Defendant testified that: 1) Plaintiffs told her that in order to protect her interest in the commonly-held property from potential forfeiture, that she would need to transfer it into the Porter Family Trust; 2) Defendant believed Plaintiffs' representations about possible forfeiture; 3) Defendant transferred her interest into the trust as result of Plaintiffs' representations; and 4) Defendant would not have transferred her interest if she had known that she would lose her interest as a result.  Additionally, Robert Levak testified that Plaintiffs specifically intended to induce Defendant to transfer her interest in the property in order to "get her off of the land," and that they invented the story about possible forfeiture as a means to procure Defendant's agreement to the transfer.

Levak also testified that Plaintiffs exhibited a large degree of control over Defendant at the time of the agreement and transfer, and that they desired to maintain that control by inducing her to enter in to the agreement and transfer.  Levak's testimony regarding Plaintiffs' desire to control Defendant was echoed by Defendant, and was further supported by evidence during

---

[8] Plaintiffs' also argue that "the evidence at trial demonstrated, all parties to the contract and, indeed, everyone in the Porter family understood the purpose of the Trust - to protect Powell Porter's assets and provide for the family should anything happen to Powell."  (Pl. Motion at 6).  While this argument may be construed as a defense to the issue of Plaintiffs' intent, it fails to address the substance of Defendant's counterclaims, Defendant's allegation that Plaintiffs fraudulently induced Defendant to part with *her* interest in the commonly held property.

Plaintiffs also argue that Defendant's fraud claims are contradicted by their own allegations that Defendant withheld two deeds from transfer into the trust.  (*Id*. at 7).  The Court has already addressed these allegations and finds that they are no more credible as an argument against Defendant's counterclaims than they were as an argument for Plaintiffs' claims.

Defendant's cross-examination of Plaintiffs' witnesses that Plaintiffs, and particularly Powell Porter, sought to maintain strict control over the lives of the members of his family.

Additionally, as the Court noted above, the trust was allegedly prepared by an attorney named Joseph Hart. (Pl. Exh. 15). However, Plaintiffs' did not call Hart as a witness to verify the legitimacy of the trust, or to verify the legitimacy of the signed and allegedly fraudulent agreement and quitclaim. In fact, Plaintiffs failed to present any evidence at all that Hart, or any licensed attorney, provided oversight to the preparation of the trust and its accompanying documents. Such lack of evidence lends further support to Defendant's allegations that the documents were devised by Plaintiffs as a means to defraud her of her interest in the commonly-owned property.

Accordingly, as to Defendant's counterclaims for fraud and constructive fraud, the Court finds that the clear weight of evidence was in favor of Defendant. Therefore, Plaintiffs' motion for new trial on said counterclaims is <u>denied</u>. Likewise, as to Defendant's counterclaims for fraud and constructive fraud, the Court also finds that there was sufficient evidence for the jury to find for Defendant. Therefore, Plaintiffs' motion for judgment as a matter of law on said counterclaims is also <u>denied</u>.

### 4. Defendant's Counterclaim for Conversion

Plaintiffs' dispute the jury's findings that Plaintiffs converted various items of Defendant's personal property, and that Defendant did not abandon the items. (Pl. Motion at 7).

The Court instructed the jury on Defendant's counterclaim for conversion as follows:

> The Defendant has alleged the counterclaim of conversion. Thus, the . . . relevant issue is: Did the Plaintiffs, Lori Porter and Powell Porter convert various items of the Defendant Tammera Porter's personal property, including: four horses, a Honda 400 ATV, Defendant's personal clothing and bedroom furniture that was formerly located in the Plaintiffs' Wilkes County home, a quilt given to the Defendant by the Defendant's grandmother, and an afghan given to the Defendant by the Defendant's aunt?
>
> On this issue the burden of proof is on the defendant. This means that the defendant must prove, by the greater weight of the evidence, two things:
>
> First, that until the time the plaintiffs came into possession of the specific items of personal property, the defendant was the lawful owner of the personal property and was entitled to their immediate possession.
>
> Second, that the plaintiffs converted the specific items of personal property to *their* own use.
>
> The defendant need not prove that the plaintiffs had a wrongful intent. Good faith, honest intentions and innocence are not defenses.

*See* N.C.P.I., Civil 806.00, Conversion (Replacement May 1996).

The Court also defined the term "conversion" as follows:

> Conversion is: the unauthorized exercise of a right of ownership over personal property belonging to another; the unauthorized alteration of the condition of personal property belonging to another; the unauthorized exclusion of an owner from exercising her rights of ownership over her own personal property; and/or the unauthorized retention of personal property after the owner has made a demand for its return.

*See id*.

The Court also instructed the jury on Plaintiffs' defense of abandonment:

> The Plaintiffs have denied Defendant's counterclaim for conversion and have

raised the defense of abandonment. Thus, the . . . relevant issue is: Did the Defendant, Tammera Porter abandon various items of her personal property, including: four horses, a Honda 400 ATV, Defendant's personal clothing and bedroom furniture that was formerly located in the Plaintiffs' Wilkes County home, a quilt given to the Defendant by the Defendant's grandmother, and an afghan given to the Defendant by the Defendant's aunt?

On this issue, the burden of proof is on the plaintiffs. This means that the plaintiffs must prove, by the greater weight of the evidence, two things:

First, that defendant had the intent to give up all claim to the specific items of personal property on a permanent basis, and

Second, that the defendant showed this intent by positive and unequivocal conduct. Intent is a determination to act in a certain way or to do a certain thing. Every person is presumed to intend the natural consequences of her voluntary actions.

Furthermore, when an owner abandons something, she does so without being forced. A gift is not an abandonment. A sale is not an abandonment. An owner abandons something simply because she no longer desires to possess it.

If an owner of personal property terminates her ownership by abandonment, ownership passes to the first person who thereafter takes possession.

The mere lapse of time or other delay by an owner in asserting her claim of ownership will not amount to abandonment unless such lapse or other delay is accompanied by acts clearly inconsistent with her ownership.

N.C.P.I., Civil 806.01, Conversion, Defense of Abandonment (Replacement May 1996).

Plaintiffs argue that Defendant's testimony that she owned four named horses was refuted by title and registration documents that they submitted into evidence which named Plaintiff Powell Porter, or Porter Ranch, Incorporated, as the owners. (Pl. Motion at 7). Plaintiffs also argue that the Defendant failed to demonstrate that she possessed any ownership interest in an all terrain vehicle that she claimed. (*Id*. at 8). Plaintiffs finally argue that Defendant abandoned any other items of personal property when she failed to retrieve them from Plaintiffs after Plaintiffs

made the items available to her.  (*Id*.).

Defendant testified at trial that Plaintiff Powell Porter gave her two horses named Midnight Express and Werther's Sonic Boom, that she paid the breeding fee for a horse named PR's Southern Dock, and that she purchased a horse named PR's Brite-N-Shining Star. Defendant maintained that despite the title and registration documents presented by Plaintiffs, she was at all times the sole intended and actual owner of the horses.  Defendant also testified that Plaintiff Powell Porter gave her an all terrain vehicle, which she identified as a red Honda 400 ATV.  Defendant maintained that she was at all times the intended and actual owner of the all terrain vehicle.  Defendant's witness, Robert Levak, verified Defendant's ownership claims.

Defendant also identified several other items of personal property which she claimed Plaintiffs had converted.  Defendant specifically maintained that Plaintiffs converted a quilt given to her by her grandmother, an afghan given to her by her aunt, and her personal clothing and bedroom furniture that were formerly located in the Plaintiffs' Wilkes County home. Defendant testified that she asked Plaintiffs several times to allow her to retrieve these items, but Plaintiffs refused.  Defendant testified that she also attempted to arrange retrieval of the items through her attorney and third-party movers.  Defendant stated that Plaintiff Powell Porter originally agreed to such arrangement, but reneged on the day the movers were scheduled to retrieve the items.

Accordingly, as to Defendant's counterclaim for conversion, the Court finds that the clear weight of evidence was in favor of Defendant.  Therefore, Plaintiffs' motion for new trial on said counterclaim is <u>denied</u>.  Likewise, as to Defendant's counterclaim for conversion, the Court also

finds that there was sufficient evidence for the jury to find for Defendant. Therefore, Plaintiffs' motion for judgment as a matter of law on said counterclaim is also <u>denied</u>.

In sum, the Court, having carefully considered each of Plaintiffs' arguments in support of their motion for judgment as a matter of law and motion for new trial, for the reasons stated above, <u>denies</u> both motions.[9]

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Judgment as a Matter of Law is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for New Trial is hereby **DENIED**.

Signed: April 4, 2008

Richard L. Voorhees
United States District Judge

---

[9] The Court does not address Defendant's argument that Plaintiffs' motion for judgment as a matter of law should be denied on the grounds that Plaintiffs failed to articulate their reasons for moving for judgment as a matter of law at the close of evidence. (Def. Resp. at 1-2). Having denied Plaintiffs' motion on the merits, the issue is moot.